J-S05024-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES SHARIFF STANLEY | : | |
| | : | |
| Appellant | : | No. 817 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 30, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001143-2023

BEFORE:   PANELLA, P.J.E., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KING, J.:                      **FILED JULY 17, 2026**

Appellant, Charles Shariff Stanley, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury trial convictions for firearms not be carried without a license and possession of a firearm by a prohibited person.[1] We affirm Appellant's convictions but vacate the judgment of sentence and remand for resentencing.

The relevant facts and procedural history of this case are as follows. On March 20, 2022, a criminal complaint and an associated arrest warrant were filed. The criminal complaint charged Appellant with receiving stolen property, firearms not to be carried without a license, possession of a firearm by a prohibited person, possession of a controlled substance with intent to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6106(a) and 6105(a), respectively.

manufacture or deliver, possession of a controlled substance, and possession of drug paraphernalia. Appellant was not arrested until November 29, 2022. Appellant filed an *omnibus* pretrial motion on May 26, 2023. Appellant sought to suppress physical evidence, alleging that the officer did not have probable cause to stop Appellant's vehicle. Appellant further alleged that the search warrant issued to search Appellant's vehicle lacked sufficient probable cause.

The court conducted a hearing on the motion to suppress on July 31, 2023. Pennsylvania State Trooper, Francis Vanore, testified that he was on patrol on the evening of March 19, 2022 and observed a Dodge Challenger, driven by Appellant, traveling at approximately 40 mph in a 25 mph zone. Trooper Vanore explained that he confirmed the speed of Appellant's vehicle with the speedometer in his patrol vehicle for over $3/10^{th}$ of a mile. Trooper Vanore further explained that the speedometer in his vehicle is regularly calibrated by a third-party company to ensure its accuracy. During cross examination, Trooper Vanore acknowledged that he did not know the exact date when the speedometer in his vehicle was calibrated prior to March 19, 2022. When Trooper Vanore was behind Appellant's vehicle, he could also see that the seat belts of both the driver and passenger seats were not properly fastened because the strap was visible behind the headrest of both seats. At this point, Trooper Vanore activated his overhead lights and initiated a traffic stop. Appellant's vehicle pulled into a well-lit gas station parking lot and stopped.

Trooper Vanore approached the driver's side. Appellant informed

Trooper Vanore that the vehicle was a rental and provided him with the documentation. While they were conversing, Trooper Vanore observed what appeared to be raw marijuana on the lap of the passenger and the floorboard of the vehicle on the passenger side. Trooper Vanore also noticed a strong odor of alcohol and marijuana emanating from the vehicle. Trooper Vanore further testified that he observed a police radio scanner in the cup holder of the passenger side door. Based on his observations, Trooper Vanore asked Appellant to exit the vehicle to undergo field sobriety testing. Appellant denied consuming alcohol or marijuana prior to driving.

Trooper Vanore obtained identification from Appellant while Trooper Vanore's partner, Trooper Ross Greenwood, questioned and obtained identification from the passenger. The passenger's driver's license identified him as Dante Sharpe. Appellant remained calm throughout the interaction, but Mr. Sharpe appeared very nervous, pacing and looking around as the Troopers gathered information. Trooper Vanore ran Appellant and Mr. Sharpe's information and learned that Mr. Sharpe had a warrant out for his arrest. As Trooper Vanore exited his vehicle again, Mr. Sharpe fled on foot and Trooper Greenwood gave chase. As Mr. Sharpe was running, a firearm fell out of his waistband. Trooper Greenwood recovered the firearm.

Thereafter, Trooper Vanore asked Appellant for consent to search his vehicle, which Appellant denied. Trooper Vanore towed the vehicle to the barracks while awaiting approval of a search warrant. After obtaining a search warrant, Trooper Vanore searched Appellant's vehicle and recovered a firearm

- 3 -

from under the driver's seat and a backpack containing narcotics from the trunk.

At the conclusion of the suppression hearing, the court took the matter under advisement. On November 8, 2023, the court denied Appellant's motion to suppress, finding that the traffic stop was lawful and the search warrant was supported by sufficient probable cause.

A jury trial was scheduled to commence on November 12, 2024. That morning, prior to jury selection, Appellant filed a motion to dismiss pursuant to Pa.R.Crim.P. 600. On November 13, 2024, the court conducted a hearing on the motion outside of the presence of the jury. Appellant submitted an exhibit outlining the proceedings in this case and setting forth the reasons for any continuances. The court reviewed the dates with the parties. Appellant indicated that a continuance from April 1, 2024 until May 20, 2024 was required because there was outstanding DNA evidence that the Commonwealth had not provided to Appellant. The court noted that its file contained documentation, which was signed by Appellant's counsel, which listed this period as a defense request for continuance. Appellant's counsel acknowledged his signature on the form indicating that the continuance was a defense request but maintained that the continuance was because there was outstanding discovery that the Commonwealth needed to provide.

Trooper Vanore testified that an arrest warrant for Appellant was issued on March 20, 2022, the same date that the criminal complaint was filed. Trooper Vanore entered the warrant into the National Crime Information

Center database.  Trooper Vanore also contacted Appellant's probation officer, who issued a warrant for Appellant's arrest for violating his parole.  Trooper Vanore personally went to Appellant's last known address several times in an attempt to apprehend Appellant.  Trooper Vanore also referred the warrant to the Philadelphia Police Department and the United States Marshals Service Fugitive Task Force for assistance in apprehending Appellant.  Trooper Vanore testified that he reached out to these law enforcement agencies multiple times at different time periods to follow up on the search for Appellant.  On cross examination, Trooper Vanore stated that he did not know exactly what steps the probation and parole office, the Philadelphia Police Department, and the Marshals Service undertook to locate Appellant.  Nevertheless, Trooper Vanore testified that he was aware that the Marshals Service had access to data sources that it was actively using to locate Appellant.  He further testified that the Philadelphia Police Department went to several different areas to search for Appellant.  Trooper Vanore also testified that during this time period, he identified Appellant as the perpetrator in an unrelated criminal incident in Philadelphia, which helped narrow down Appellant's location.

The court denied Appellant's Rule 600 motion, relying in part on the signed continuance documentation in its file.  The court further found that Trooper Vanore's credible testimony established that he exhibited due diligence in attempting to apprehend Appellant.

During the jury selection process, following group *voir dire*, Appellant requested to ask juror number six additional questions because that juror

indicated on his written questionnaire that he would be more likely to believe the testimony of a police officer. The court denied the request, noting that juror number six did not stand up when the court raised the same inquiry during group *voir dire*. Juror number six was ultimately selected as a juror in Appellant's trial.

On November 13, 2024, the jury convicted Appellant of firearms not to be carried without a license and possession of a firearm by a prohibited person. The jury acquitted Appellant of the remaining charges. On December 30, 2024, the court sentenced Appellant to three to fifteen years' incarceration for the firearms not to be carried without a license conviction and six and a half to twenty years' incarceration for the possession of a firearm by a prohibited person conviction, to be served consecutively. On January 3, 2025, Appellant timely filed a post-sentence motion, which the court denied on March 12, 2025. Appellant filed a timely notice of appeal on March 27, 2025. On April 8, 2025, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on April 28, 2025.

Appellant raises the following issues for our review:

> Did the trial court err by denying Appellant's motion to suppress where the Commonwealth did not have probable cause to stop and search Appellant's vehicle, and where the trial court relied on information at the suppression hearing that was not included in the written search warrant?
>
> Did the trial court err by denying Appellant's motion to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 600, where the Commonwealth did not demonstrate due

diligence and there were delays caused by outstanding discovery and police officer unavailability?

Did the trial court abuse its discretion by declining to recall Juror #6 for further questioning after he had indicated in his written questionnaire that he was more likely to believe a police officer's testimony?

Did the trial court impose an illegal sentence on the charge of possession of a firearm without a license, 18 Pa.C.S. § 6106?

Did the trial court abuse its discretion by sentencing Appellant to an illegal, consecutive, and grossly disproportionate sentence for the conduct in question?

(Appellant's Brief at 4) (reordered for purposes of disposition).

In his first issue, Appellant argues that Trooper Vanore's testimony was insufficient to establish probable cause to stop Appellant's vehicle. Appellant claims that Trooper Vanore's testimony failed to establish that Appellant was speeding because he could not recall where the 25 mph zone began and/or ended. Appellant also argues that Trooper Vanore's testimony that Appellant was traveling at a speed of 40 mph was insufficient because Trooper Vanore did not produce any proof that the speedometer in his vehicle was properly calibrated. Appellant further contends that Trooper Vanore's testimony that he observed Appellant's unfastened seatbelt "lacks all indicia of credibility" because the traffic stop occurred at night. (*Id.* at 24).

Regarding the search warrant, Appellant claims that the affidavit of probable cause included observations of contraband on only Mr. Sharpe's person or outside of the vehicle. Appellant argues that "[b]ecause Trooper Vanore could not articulate any probable cause that directly pertained to

Appellant or his vehicle, the warrant lacked a substantial nexus" between the criminal activity and the vehicle. (*Id.* at 27). Appellant further claims that the court improperly considered evidence that was not included in the affidavit of probable cause, including Trooper Vanore's testimony that he observed a police scanner in the vehicle. Appellant concludes that the court erred in denying his motion to suppress physical evidence on these grounds, and this Court must grant relief. We disagree.

The following principles govern our review of an order denying a motion to suppress:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Ford*, 175 A.3d 985, 989 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018). Additionally, "[w]ith respect to the suppression court's factual findings, it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the

suppression court judge is entitled to believe all, part[,] or none of the evidence presented[.]" ***Commonwealth v. Easter***, 331 A.3d 675, 679 (Pa.Super. 2025), *appeal denied*, ___ Pa. ___, 345 A.3d 1199 (2025) (citation omitted).

> A police officer has the authority to stop a vehicle when he or she has **reasonable suspicion** that a violation of the vehicle code has taken place, for the purpose of obtaining necessary information to enforce the provisions of the code. 75 Pa.C.S. § 6308(b). However, if the violation is such that it requires no additional investigation, the officer must have **probable cause** to initiate the stop.
>
> Put another way, if the officer has a legitimate expectation of investigatory results, the existence of reasonable suspicion will allow the stop—if the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion.

***Commonwealth v. Brown***, 64 A.3d 1101, 1105 (Pa.Super. 2013) (internal citations and quotations omitted) (emphasis in original). ***See also Commonwealth v. Gurung***, 239 A.3d 187, 191 (Pa.Super. 2020) (noting that where stop is based on observed violation of Vehicle Code or otherwise non-investigable offense, officer must have probable cause to make constitutional traffic stop). A "police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." ***Id.***

Further:

> [T]he Vehicle Code provides that "[t]he rate of speed of any vehicle may be timed on any highway by a police officer using a motor vehicle equipped with a speedometer. In

- 9 -

> ascertaining the speed of a vehicle by the use of a speedometer, the speed shall be timed for a distance of not less than three-tenths of a mile." 75 Pa.C.S.A. § 3368(a). Speedometers must be periodically calibrated for accuracy. 75 Pa.C.S.A. § 3368(d); **Commonwealth v. Kaufman**, 849 A.2d 1258, 1259 (Pa.Super. 2004). Proof of calibration is necessary to obtain a **conviction** for speeding. [**Id.**] at 1259. The law does not require calibration to rely on a speedometer for a vehicle stop. "[C]riterion of admissibility in evidence, to prove the accused's guilt, should not be applied to the facts relied upon to show probable cause." **Commonwealth v. Weaver**, 76 A.3d 562, 567 (Pa.Super. 2013) (citing **Brinegar v. United States**, 338 U.S. 160, 172, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)), *affirmed*, 629 Pa. 313, 105 A.3d 656 (2014). Thus, … [a] certification [of calibration] of [a Trooper's] speedometer [is] unnecessary to support a stop for speeding.

**Commonwealth v. Johnson, T.**, 202 A.3d 125, 129 (Pa.Super. 2019)

(emphasis in original).

Additionally, the following principles apply to our review of claims involving search warrants:

> Article I, Section 8 of the Pennsylvania Constitution ensures that citizens of this Commonwealth are protected from unreasonable searches and seizures by requiring that warrants: (1) describe the place to be searched and the items to be seized with specificity and (2) be supported by probable cause to believe that the items sought will provide evidence of a crime.

**Commonwealth v. Johnson, L.**, 662 Pa. 691, 706, 240 A.3d 575, 584

(2020) (internal citations and footnote omitted).

> Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted.

- 10 -

*Commonwealth v. Green*, 204 A.3d 469, 482 (Pa.Super. 2019), *aff'd*, 671 Pa. 1, 265 A.3d 541 (2021) (internal citation and quotation marks omitted).

"The task of the magistrate acting as the issuing authority is to make a practical, common sense assessment of whether, given all the circumstances set forth in the affidavit, a fair probability exists that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Fletcher*, 307 A.3d 742, 746 (Pa.Super. 2023), *appeal denied*, ___ Pa. ___, 318 A.3d 384 (2024) (quoting *Commonwealth v. Harlan*, 208 A.3d 497, 505 (Pa.Super. 2019)). "In reviewing an issuing authority's decision to issue a warrant, a suppression court must affirm unless the issuing authority had no substantial basis for its decision." *Id.* (quoting *Commonwealth v. Lyons*, 622 Pa. 91, 110, 79 A.3d 1053, 1064 (2013)). Further, at a hearing on a motion to suppress evidence obtained pursuant to a search warrant, the court may only consider the affidavit of probable cause to determine whether sufficient cause exists to support the search warrant. *See* Pa.R.Crim.P. 203(D).

Instantly, the trial court found that Trooper Vanore credibly testified that Appellant was driving 40 mph in a 25 mph zone. Although Trooper Vanore stated during cross examination that he could not recall the exact location where the 25 mph zone began and ended, Trooper Vanore definitively testified that Appellant was driving in a 25 mph zone when he observed Appellant driving at 40 mph. Trooper Vanore also testified that Appellant drove past a

posted sign stating that the speed limit was 25 mph. Additionally, Trooper Vanore testified that the speedometer in his vehicle was regularly calibrated by a third-party company to ensure accuracy. Notably, Trooper Vanore did not need to provide a certification of calibration to support his testimony to demonstrate that he had probable cause to stop Appellant's vehicle for speeding. *See Johnson, T., supra*. As such, we reject Appellant's claim that Trooper Vanore's testimony was insufficient to establish that Appellant was speeding, in violation of the Vehicle Code. Therefore, we discern no error in the court's determination that Trooper Vanore had probable cause to stop Appellant's vehicle for speeding.[2] *See Gurung, supra*; *Ford, supra*.

Regarding the search warrant, contrary to Appellant's assertion, there is no indication in the record that the court considered any evidence that was not included in the affidavit of probable cause in determining whether there was sufficient probable cause to support the search warrant. At the suppression hearing, Appellant argued to the court that Trooper Vanore did not state in the affidavit of probable cause that he observed a police scanner in the vehicle and marijuana on the floorboard of the vehicle. The Commonwealth argued that Trooper Vanore did state in the application that

_____

[2] The trial court did not cite Trooper Vanore's testimony that he observed Appellant driving without his seat belt fastened as a basis for probable cause to justify the vehicle stop. As such, it is unclear from the record whether the court found this testimony credible. Nevertheless, as the court's finding that Appellant was speeding is sufficient to establish probable cause, we need not address Appellant's argument regarding the seat belt violation any further.

he observed marijuana in the vehicle. The court did not disregard Appellant's argument but stated that it would "have to read [the affidavit of probable cause] pretty closely" prior to making a decision. (*See* N.T. Suppression Hearing, 7/31/23, at 52). Additionally, in the order denying Appellant's motion to suppress, the court expressly stated that it found that the search warrant was sufficient because "within the four corners of the search warrant, more than once, there were specific references to plain view marijuana in the vehicle." (*See* Suppression Order, filed 11/8/23).

Further, the record supports the court's determination that the averments in the affidavit sufficiently established probable cause to support the issuance of the search warrant. The affidavit of probable cause states that Trooper Vanore smelled a strong odor of alcohol and marijuana emanating from the vehicle. It also states that Mr. Sharpe had a warrant out for his arrest. Further, it states that Trooper Vanore ran the serial number of the firearm that Mr. Sharpe dropped as he fled and learned that it was stolen. The affidavit states that Trooper Vanore towed the vehicle "due to the firearm located on [Mr.] Shape's person and **the marijuana in the vehicle** and on [Mr.] Sharpe's person[.]" (*See* Suppression Hearing- Commonwealth Exhibit 1, filed 7/31/23, at 2) (emphasis added). Additionally, the affidavit states that the search warrant was being sought "[b]ased on viewing suspected raw marijuana in plain view on the person/**in the Dodge** and the stolen firearm located on [Mr.] Sharpe's person and **in the above vehicle**[.]" (*Id.*)

- 13 -

(emphasis added). Although the affidavit does not specify that Trooper Vanore saw marijuana on the passenger side floorboard of the vehicle, it sufficiently sets forth that Trooper Vanore observed marijuana both on Mr. Sharpe's person **and** in the vehicle. Further, a common sense reading of the facts in the affidavit demonstrates that Mr. Sharpe, who was a passenger in the vehicle immediately before he fled from the scene, possessed the stolen firearm and marijuana that was on his person while he was in the vehicle before he exited and fled. ***See Fletcher, supra***. As such, the affidavit of probable cause sufficiently sets forth that marijuana and a stolen firearm were in the vehicle. On this record, we discern no error in the court's determination that the search warrant was properly supported by probable cause. ***See Green, supra***. ***See also Commonwealth v. Barr***, 671 Pa. 275, 307, 266 A.3d 25, 44 (2021) (holding that although possession and/or odor of marijuana alone does not amount to probable cause to search vehicle, it may be considered as factor in examining totality of circumstances); ***Commonwealth v. Barba,*** 460 A.2d 1103, 1106 (Pa.Super. 1983) (concluding that there was probable cause for search warrant of house where affidavit stated that officer observed stolen firearm and other stolen merchandise in house).

In his second issue, Appellant asserts that the court erred in concluding that the Commonwealth exercised due diligence in attempting to locate Appellant during the period of pre-arrest delay. Appellant argues that

although Trooper Vanore testified that he contacted multiple law enforcement agencies to assist him in locating Appellant, he could not verify any steps that those agencies undertook to locate Appellant. As such, Appellant maintains that the only action that Trooper Vanore could verify was his own trip to Appellant's last known address, which is insufficient to establish the requisite due diligence. Appellant further contends that the court erred in concluding that the delay from April 1, 2024 to May 20, 2024 was attributable to Appellant. Appellant argues that this delay was due to a continuance request for outstanding discovery and should be charged to the Commonwealth regardless of whether the continuance request was marked as a defense continuance. Appellant further argues that there is no evidence that the Commonwealth exercised due diligence during this time period to retrieve the DNA lab results that were outstanding. Appellant concludes that the court erred in denying his motion to dismiss pursuant to Rule 600, and this Court should dismiss all charges. We disagree.

The following principles apply to our review of a Rule 600 claim:

> Our standard of review in evaluating speedy trial issues is whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused.

> [Our Supreme] Court has previously explained that Rule 600 was adopted in order to protect defendants' constitutional

- 15 -

rights to a speedy trial under the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, in response to the United States Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). [Our Supreme Court has] also recognized that Rule 600 has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution in criminal cases. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it.

*Commonwealth v. Mullen*, 341 A.3d 799, 803 (Pa.Super. 2025) (quoting

*Commonwealth v. Womack*, __ Pa. __, ___, 315 A.3d 1229, 1237 (2024)).

Rule 600 provides, in pertinent part:

**Rule 600.  Prompt Trial**

**(A)  Commencement of Trial; Time for Trial**

\*     \*     \*

(2)  Trial shall commence within the following time periods.

(a)  Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

\*     \*     \*

**(C)  Computation of Time**

(1)  For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600(A)(2)(a), (C)(1).

> Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth. Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence.

***Commonwealth v. Martz***, 232 A.3d 801, 810-11 (Pa.Super. 2020) (citations and quotation marks omitted).

"To decide whether the rule was violated, a court must first calculate the 'mechanical run date,' which is 365 days after the complaint was filed, and then must account for any 'excludable time.'" ***Commonwealth v. Lear***, ____ Pa. ___, ____, 325 A.3d 552, 560 (2024) (citations and quotation marks omitted). "Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date." ***Commonwealth v. Graves***, 328 A.3d 1005, 1009 (Pa.Super. 2024).

"[W]e may … exclude all periods of delay from the applicable date, except for those chargeable to the Commonwealth where it has failed to act diligently." ***Commonwealth v. Dunmore***, 324 A.3d 1, 7 (Pa.Super. 2024). "[T]he period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended

because his or her whereabouts were unknown and could not be determined by due diligence" is excludable time. Pa.R.Crim.P. 600, *Comment*. Additionally, any "period of delay at any stage of the proceedings as results from … any continuance granted at the request of the defendant or the defendant's attorney" is also excludable. ***Id.*** Further, "if the defense … indicates[s] approval or acceptance of [a] continuance, the time associated with the continuance is excludable under Rule 600 as a defense request." ***Commonwealth v. Hunt***, 858 A.2d 1234, 1241 (Pa.Super. 2004).

Here, the criminal complaint was filed on March 20, 2022. Therefore, the mechanical run date was March 20, 2023. ***See Lear, supra***. At the Rule 600 hearing, Appellant submitted an exhibit listing the procedural history of this case and conceded that 342 days of delay were attributable to Appellant. (***See*** Rule 600 Hearing- Defense Exhibit 1, filed 11/13/24). In addition, the court also found that the delay between April 1, 2024 and May 20, 2024 was attributable to Appellant. Specifically, the court noted that Appellant's counsel signed a continuance sheet indicating that this delay was due to a defense continuance request. When the court showed Appellant's counsel the continuance form, counsel acknowledged that the form was signed and listed this period as a defense continuance request. Appellant now claims that this period should have been considered a Commonwealth request because the continuance was required due to outstanding discovery. Nevertheless, regardless of Appellant's assertion after the fact, the record demonstrates that

this continuance was a defense request, or at the very least, that Appellant approved or joined in the request. As such, we discern no error in the court's conclusion that the 49 days of delay between April 1, 2024 and May 20, 2024 was excludable time as a defense request for continuance. *See Hunt, supra*.

Further, the trial court excluded the 254 days that elapsed between when the criminal information was filed and Appellant was arrested. The court determined that Appellant's whereabouts were unknown and the Commonwealth exhibited due diligence in attempting to locate and apprehend Appellant. Appellant's argument that Trooper Vanore's testimony was insufficient to establish due diligence is belied by the record. Trooper Vanore testified that he reached out to Appellant's probation office, the Philadelphia Police Department and the Marshals Service. Contrary to Appellant's assertion, Trooper Vanore provided testimony regarding the efforts these law enforcement agencies undertook to locate Appellant. Specifically, Trooper Vanore testified that the Marshals Service used databases to which they had access to try to locate Appellant. Trooper Vanore also testified that the Philadelphia Police Department went to multiple areas in the city in an attempt to find Appellant and communicated about an unrelated offense that Appellant was suspected to have committed. Trooper Vanore further testified that he personally went to Appellant's last known address multiple times. On this record, we discern no error in the court's conclusion that the pre-arrest delay between March 20, 2022 and November 29, 2022 was excludable delay. *See*

Pa.R.Crim.P. 600, *Comment*; **Dunmore, supra**.

Therefore, the 342 days conceded by Appellant, the 49 days between April 1, 2024 and May 24, 2024, and the 254 days between the filing of the criminal complaint and Appellant's arrest are all excludable. This results in a total of 645 days of excludable time, making the adjusted run date December 24, 2024. **See Graves, supra**. Appellant's trial commenced on November 12, 2024, prior to the adjusted run date. As such, the court did not err in denying Appellant's motion to dismiss pursuant to Rule 600.[3] **See Mullen, supra**.

In his third issue, Appellant asserts that juror number six indicated on his written questionnaire that he was more likely to believe the testimony of a police officer. Appellant claims that "[i]t strains belief that the trial court can be assured of a juror's impartiality simply because they do not stand in response to the same question that was in the written questionnaire." (Appellant's Brief at 15). Appellant argues that "many jurors do not pay attention during the lengthy proceedings or are concerned about expressing their biased viewpoints in full view of everyone." (**Id.**) Appellant maintains

---

[3] The court further found that the time between December 20, 2022 and February 20, 2023 was excusable because Trooper Vanore, a key Commonwealth witness, was on paternity leave. Appellant disputes this finding, claiming that there was no support in the record for the court's conclusion. Nevertheless, as we have determined that Appellant's Rule 600 claim fails even if this time period was not excluded from the Rule 600 calculation, we need not address Appellant's argument further.

that he was prejudiced because the Commonwealth's case hinged entirely on the credibility of the testifying police officers. Appellant concludes that the court erred in denying Appellant's request to ask further questions of juror number six, and this Court must grant him a new trial. We disagree.

Appellate review of the jury selection process implicates the following principles:

> The process of selecting a jury is committed to the sound discretion of the trial judge and will be reversed only where the record indicates an abuse of discretion, and the appellant carries the burden of showing that the jury was not impartial.

*Commonwealth v. Noel*, 629 Pa. 100, 121, 104 A.3d 1156, 1169 (2014). "[I]t is only when the court permits the jury selection process to impugn the fundamental qualities of competence, fairness and impartiality that we may conclude that a palpable abuse of discretion has been committed." *Id.* at 123, 104 A.3d at 1171 (internal citation and quotation marks omitted).

"The purpose of *voir dire* is to ensure the empaneling of a fair and impartial jury capable of following the instructions on the law as provided by the trial court." *Id.* at 120, 104 A.3d at 1168. "[*Voir dire*] is not intended to provide appellant with a better basis upon which to utilize his peremptory challenges. The inquiry should be strictly confined to disclosing qualifications or lack of qualifications and should focus on whether a juror has formed a fixed opinion as to an accused's guilt or innocence." *Commonwealth v. Hathaway*, 500 A.2d 443, 447 (Pa.Super. 1985).

The Pennsylvania Rules of Criminal Procedure govern the examination of prospective jurors as follows:

**Rule 631.  Examination and Challenges of Trial Jurors**

\*     \*     \*

(F) In capital cases, the individual *voir dire* method must be used, unless the defendant waives that alternative.  In non-capital cases, the trial judge shall select one of the following alternative methods of *voir dire*, which shall apply to the selection of both jurors and alternates:

*(1) Individual Voir Dire and Challenge System*

(a) *Voir dire* of prospective jurors shall be conducted individually and may be conducted beyond the hearing and presence of other jurors.

\*     \*     \*

*(2) List System of Challenges*

(a) A list of prospective jurors shall be prepared. The list shall contain a sufficient number of prospective jurors to total at least 12, plus the number of alternates to be selected, plus the total number of peremptory challenges (including alternates).

(b) Prospective jurors may be examined collectively or individually regarding their qualifications.  If the jurors are examined individually, the examination may be conducted beyond the hearing and presence of other jurors.

Pa.R.Crim.P. 631(F).  Accordingly, individual *voir dire* is only required in capital cases.  In all non-capital cases, the trial court has discretion to determine who will ask questions of the jurors and whether the jurors will be questioned individually or collectively.  ***See id.  See also Hathaway, supra***

at 144-45.

Here, the court asked the following question to the jury during group *voir dire*:

> Another instruction I'll give you is the following. The testimony of a police officer must not be given any more weight nor any less weight than the testimony of any other witnesses simply because he or she is a police officer. You are not to show any bias for or favoritism for a police officer strictly because he or she is a police officer. You're to evaluate their testimony the same as any other witness. If you cannot or will not follow that instruction, please stand.

(N.T. Trial, 11/12/24, at 20-21). In response, several jurors stood up but juror number six did not. As such, despite juror number six's initial indication on the written questionnaire that he was more likely to believe the testimony of a police officer, juror number six did not reaffirm any such bias after hearing the court's more detailed instruction.

Further, Appellant's assertion that juror number six may not have been paying attention or was nervous about expressing his opinion in a group setting is merely speculation. There is no indication in the record that juror number six was inattentive during group *voir dire*. Additionally, the record shows that several other jurors stood in response to this question. As such, juror number six would not have been the only individual to express this opinion in the group setting if he wished to do so. On this record, we cannot say that the court abused its discretion in denying Appellant's request to

individually *voir dire* juror number six.[4]  **See Noel, supra**.

In his fourth issue, Appellant asserts that he was convicted of possession of a firearm without a license, graded as a felony of the third-degree. Appellant claims that a felony of the third degree carries a maximum sentence of seven years.  Appellant concludes that the court imposed an illegal sentence by sentencing Appellant to three to fifteen years' incarceration on his possession of a firearm without a license conviction.  We agree.

A challenge to the legality of a sentence raises a question of law.  **See Commonwealth v. Smith**, 956 A.2d 1029, 1033 (Pa.Super. 2008) (*en banc*). In reviewing this type of claim, our standard of review is *de novo* and our scope of review is plenary.  **Commonwealth v. Childs**, 63 A.3d 323, 325 (Pa.Super. 2013).  "An illegal sentence must be vacated[.]"  **Commonwealth v. Ramos**, 197 A.3d 766, 769 (Pa.Super. 2018) (citation and quotation marks omitted).  Moreover, assuming jurisdiction is proper, "a challenge to the legality of the sentence can never be waived and may be raised by this Court *sua sponte*."  **Commonwealth v. Wolfe**, 106 A.3d 800, 801 (Pa.Super. 2014)

_____

[4] Appellant cites to **Commonwealth v. Penn**, 132 A.3d 498 (Pa.Super. 2016) to support his argument.  Nevertheless, **Penn** is not applicable here.  **Penn** addresses a challenge to the trial court's denial of a motion to strike a juror for cause.  Here, Appellant did not move to strike juror number six for cause. Further, **Penn** is materially distinguishable.  The juror in question in **Penn** not only indicated in her written questionnaire that she was biased towards police testimony but also "unequivocally testified during *voir dire* that she would be more likely to believe the testimony of a police officer[.]"  **Id.** at 504 (quotation marks omitted).  Such was not the case here.  Juror number six did not continue to assert a bias towards police testimony during *voir dire*.

(citation omitted).

> A claim that implicates the fundamental legal authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. Likewise, a sentence that exceeds the statutory maximum is illegal. If a court imposes a sentence outside of the legal parameters prescribed by the applicable statute, the sentence is illegal and should be remanded for correction.

**Commonwealth v. Infante**, 63 A.3d 358, 363 (Pa.Super. 2013) (citations and quotation marks omitted).

Instantly, the Commonwealth agrees that the sentence imposed for Appellant's possession of a firearm without a license conviction exceeded the statutory maximum for a felony of the third degree.[5] **See** 18 Pa.C.S.A. § 1103 (stating that court may not impose term of imprisonment for felony of third degree that is more than seven years). As such, the court's sentence of three to fifteen years' incarceration for Appellant's possession of a firearm without a license conviction is illegal and must be vacated. **See Infante, supra**. The court imposed consecutive sentences for Appellant's possession of a firearm without a license and possession of a firearm by a prohibited person convictions. As such, our disposition disrupts the court's overall sentencing

---

[5] The trial court did not address this issue because Appellant raised it for the first time on appeal. Nevertheless, as a challenge to the legality of a sentence is not waivable so long as jurisdiction is proper, we may address Appellant's claim. **See Wolfe, supra**.

scheme, and we must vacate Appellant's judgment of sentence in its entirety. *See Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa.Super. 2006), *appeal denied*, 596 Pa. 745, 946 A.2d 687 (2008) (stating: "If our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan").[6] Accordingly, we affirm Appellant's convictions but vacate his judgment of sentence and remand for resentencing.

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction is relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/17/2026

---

[6] Based on our disposition, Appellant's fifth issue challenging the discretionary aspects of his sentence is moot.